UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RUSSELL SHIPLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-00065-RLY-MJD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Russell Shipley ("Shipley") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). See 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED.**

**I. Background**

Shipley filed his applications for DIB and SSI on July 16, 2012, alleging October 1, 2011 as the onset date of his disability. [R. at 157.] In his applications, Shipley alleged disability due to pustular psoriasis as his disabling impairments.[1] [R. at 50.] Shipley's applications were denied initially on August, 14, 2012 and upon reconsideration on October 15, 2012. [R. at 15.]

---

[1] Shipley recited the relevant factual and medical background in his opening brief. [*See* Dkt. 12.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 13.] Because these facts involve Shipley's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and articulate specific facts as needed below.

Shipley timely requested a hearing on his applications, which was held before Administrative Law Judge Julia D. Gibbs ("ALJ") by video teleconference on July 2, 2013. [R. at 15, 22.] The ALJ issued her decision on July 31, 2013, again denying Shipley's applications for DIB and SSI [R. at 22,] and on November 17, 2014 the Appeals Council denied Shipley's request for review, making the ALJ's decision the final decision for the purposes of judicial review. [R. at 1-3.] Shipley timely filed his Complaint with this Court on January 16, 2015, which Complaint is now before the Court.

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes and regulations found within cited court decisions.

past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform his past relevant work or has no past relevant work but he can perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520.  Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity, identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities.  S.S.R. 96-8p. If the claimant does not satisfy any of these five steps, they are not "disabled." *See* 20 C.F.R. § 404.1520(a)(4) ("[i]f we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.").

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while she "is not required to address every

piece of evidence or testimony," she must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176.

### III.   The ALJ's Decision

In her decision, the ALJ first determined that Shipley met the insured status requirements of the Act through December 31, 2016 and has not engaged in substantial gainful activity since October 31, 2011. [R. at 17-18.] Next, the ALJ concluded that Shipley had the medically determinable impairments of pustular psoriasis, cellulitis, dermatitis, epidural inclusion cyst, and obesity. [R. at 18.] At step two, the ALJ found that Shipley's impairments could reasonably be expected to cause his alleged symptoms. [R. at 19.] However she found Shipley's testimony regarding the intensity, persistence, and limiting effects of his impairments less than credible, and as a result concluded that he "does not have a severe impairment or combination of impairments." [R. at 18-19.] Therefore, she found that Shipley is not disabled, as defined by the Social Security Act. [R at 11.]

### IV.   Discussion

On appeal, Shipley argues that the ALJ erred in three ways. First, he contends that the ALJ's step 2 finding that his impairments were not severe and did not meet the durational requirement were not supported by substantial evidence. [Dkt. 12 at 3-8.] Second, he argues that the ALJ erred by failing to consider whether his impairment met listing 8.04. [Dkt. 12 at 8.] Finally, he claims that the ALJ committed error when she based her decision on his failure to take prescribed treatment for his psoriasis. [Dkt. 12 at 9-10.]

**A.  Substantial Evidence and Step Two**

Step two of the five step analysis requires that the claimant show that he has a "severe impairment" or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or

combination of impairments is severe if it "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs" including, but not limited to: physical functions, use of judgment, and responding appropriately to supervision. *Id.* Furthermore, step two requires that the impairment meet the "durational requirement." 20 C.F.R. § 404.1520(a)(4)(ii). Any injury that is not expected to result in death "must be expected to last for a continuous period of at least 12 months" in order to satisfy the duration requirement. 20 C.F.R. § 404.1509. Shipley claims that the ALJ's finding that his impairments were not "severe" and were not "continuous for twelve months" was not supported by substantial evidence. [Dkt. 12 at 4-6.]

1. **Severity**

Shipley asserts that the ALJ failed to properly evaluate the severity of his skin condition. When determining the severity of a claimant's impairments, the ALJ must 1) determine whether the claimant's alleged symptoms could reasonably be produced by the claimant's medical diagnosis, and 2) determine the intensity, persistence, and limiting effects of the claimant's symptoms. [R. at 18 (citing 20 C.F.R. § 404.1521).] The ALJ concluded that Shipley's impairments could reasonably be expected to cause his alleged symptoms, but that the intensity, persistence, and limiting effects of the impairments were not "severe." [R. at 18-19.] Shipley alleges that the ALJ's finding regarding the "intensity, persistence, and limiting effects" of his impairments was not supported by substantial evidence. [Dkt. 12 at 3-5.][3]

At the hearing, Shipley testified that, since November 2011, he has had breakouts of a painful rash on his feet 95 percent of the time, and on his hands 60 to 70 percent of the time. [R.

---

[3] Shipley also argues that the ALJ "improperly assessed claimant's credibility" when making her step 2 finding. [Dkt. 14 at 1-4.] However, because this issue was raised for the first time in his reply brief, the argument is waived. *Rives v. Whiteside Sch. Dist. No. 115,* 575 F. App'x 678, 680 (7th Cir. 2014).

at 38-39.] He testified that during the breakouts, he is unable to stand for more than 15 minutes due to painful throbbing. [R. at 38.] He further testified that when his hands broke out, he had difficulty grasping and manipulating object. [R. at 38.] Based upon these symptoms, Shipley asserts that it was error to conclude that his impairments did not rise to the level of severe impairments. The Court disagrees.

The ALJ cited to numerous pieces of objective evidence that contradicted Shipley's testimony. [R at 19-22.] First, Shipley admitted at the hearing that he lost his job for reasons other than his impairments. [R. at 21;] *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (noting that when examining a patient's subjective medical complaints, the ALJ may consider that "a claimant left work for reasons other than a medical condition."). Next, two separate physicians who treated Shipley noted that Shipley's psoriasis was "much improved" by his use of ointment on the affected areas. [R at 19-20.] In particular, Dr. Sanford's medical report from May 1, 2012 stated that applying ointment to Shipley's hands and feet improved his symptoms, and indicated that Shipley's feet and hands were very good, with only a few lesions and a tender ulcer. [R. at 20.] Furthermore, at the July 2, 2013 hearing, Shipley admitted that his hands and feet were clear and had been for the last month. [R at 21.] Finally, Dr. J.V. Corcoran, a state medical consultant, determined that the record did not support that Shipley's injury was a severe injury that lasted continuously for 12 months. [*Id.*] This opinion was affirmed by Dr. M. Brill. [*Id.*]

All of the above evidence tends to undermine Shipley's testimony regarding the intensity, persistence, and limiting effects of his impairments. The evidence shows that, when Shipley applies ointment to the affected areas, his symptoms are mild. Furthermore, the evidence shows that, besides his psoriasis, Shipley has no other health concerns, and has "normal muscle strength

and motor and sensory systems, as well as normal grip strength and normal fine motor skills." [R. at 20.] Thus, the ALJ's finding that Shipley's impairments do not "significantly limit[] [his] physical or mental ability to do basic work activities" is supported by substantial evidence. 20 C.F.R. § 404.1520(c).

Shipley also argues that the ALJ improperly conflated the "severity" and "duration" issues by concluding that his injury was not severe because it was not expected to last continuously for twelve months. This argument is unconvincing. As noted above, the ALJ provided "substantial evidence" to support her finding that Shipley's injury was not severe. Shipley offers no evidence that the ALJ even considered the duration of the impairment when determining its severity.[4] Furthermore, when discussing Shipley's July 28, 2012 breakout, the ALJ specifically declined to find whether his current condition constituted a severe impairment; instead finding that his condition during the breakout did not last, and was not expected to last, for twelve consecutive months. [R. at 21] ("[a]lthough the claimant's medical records document a flare up in the claimant's psoriasis after he ceased taking medication, those records do not show that his psoriasis persisted, or was expected to persist, at a severe level for a continuous 12-month period.") This indicates that the ALJ was aware of, and sufficiently differentiated between, the severity and duration requirements at step two. Thus, the ALJ did not improperly rely on the duration requirement when making her severity finding.

---

[4] In his appeal to the Appeals Council, Shipley argued that the fact that the ALJ mentioned both the duration and severity requirements together in her official finding shows that she only decided severity based upon duration. [R. at 8.] The Court does not agree. The ALJ was analyzing step 2, which requires *both* severity and a sufficient duration. 20 C.F.R. § 404.1520(a)(4)(ii). Thus, it makes sense that her finding would include both requirements of the step. Furthermore, if a claimant does not have a "severe injury" it is impossible that he has had, or is expected to have, a "severe injury" for twelve continuous months. Thus, the wording of the ALJ's finding does not support Shipley's contention that the ALJ committed legal error.

### 2. Duration

Shipley further argues that the ALJ erred when she determined that his impairments did not persist for twelve continuous months. [Dkt. 12 at 6-7.] He argues that the ALJ failed to consider the "episodic" nature of his impairments and consider the frequency of his breakouts over a twelve month period. [*Id.*] Further, he argues that his testimony, in combination with the medical records, shows that he suffered episodic breakouts lasting three months over a twelve month period, which is sufficient to satisfy the duration requirement. [*Id.*]

On October 11, 2011, an emergency room report indicated that Shipley was prescribed medication for a rash. [R. at 19.] This is consistent with Shipley's application for benefits, which alleged that October 1, 2011 was the onset date of his disability. [R. at 157.] On July, 28 2012, a medical evaluation showed that Shipley had a flare up of his psoriasis. [R. at 20.] Even if the ALJ assumed that both breakouts were "severe," it only shows that Shipley's breakouts occurred twice in a nine month period. No other medical evidence shows that Shipley suffered from a breakout that was severe.

Shipley also relies on his own testimony to show that his psoriasis met the duration requirement of step 2. [Dkt. 12 at 7.] However, as discussed above, the ALJ had substantial evidence to discredit Shipley's testimony regarding the severity of his impairments. This same evidence provides the ALJ with substantial evidence to discredit Shipley's testimony regarding the duration of his impairments. Thus, even assuming that a three month breakout during a twelve month period satisfies the duration requirement, the ALJ had substantial evidence to conclude that Shipley's injury did not satisfy the duration requirement.

Finally, since the ALJ already had substantial evidence that Shipley's impairments were not severe, it logically follows that his impairments could not have been severe *and* persisted for

twelve continuous months. Even assuming that the ALJ was incorrect in her determination that Shipley's impairments did not last twelve continuous months, Shipley's impairments would still not satisfy step two. The fact that an impairment may have lasted twelve continuous months does not show that the injury was "severe" for twelve continuous months. Since both the severity and duration requirements must be met to satisfy step 2, the Court finds that the ALJ's determination at step 2 is supported by substantial evidence.  20 C.F.R. § 404.1520(a)(4)(ii).

### B. Step Three Analysis

Shipley also argues that the ALJ erred when she did not evaluate whether his impairments matched or met a listing as required in step three. [Dkt. 10 at 8.] However, because the ALJ concluded that Shipley's injury did not meet step two, she did not need to determine whether Shipley's impairment met a listing. *See* 20 C.F.R. § 404.1520(a)(4) ("[i]f we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Since the Court affirms the ALJ's findings at step two, the ALJ was not required to continue the sequential evaluation.

### C. Internet Research

Finally, Shipley argues that the ALJ erred by conducting her own internet research and using that research in her opinion. The ALJ briefly discussed in her opinion that Shipley refused to take acitretin, a prescribed medicine for his psoriasis, because of the expense of the medication and his fear of the potential side effects. [R. at 19-20.] She then cited to a Medline Plus Report From the National Institute of health which indicated that "acitretin may cause liver damage, and lists the side effects of liver problems that would warrant a physician's attention." [R. at 20.] Shipley argues that if the ALJ wanted to know more about the side effects of acitretin,

she should have consulted a medical expert instead of relying upon internet research. The Court finds that the ALJ did not err by citing this information.

The ALJ did not err when she used the internet to learn the possible side effects of taking acitretin. "Judges do not violate [a claimant's rights] by consulting their own funds of knowledge about the world, or by augmenting that knowledge. . . . No judge is required to approach a case in complete ignorance." *Dean v. Colvin*, No. 13-3627, 2014 WL 4723624, at *1 (7th Cir. Sept. 10, 2014). The ALJ used the internet to research the potential side effects for *any* patient who takes acitretin. [R. at 20.] Since the ALJ used internet research to gain general "knowledge about the world," as opposed to specific knowledge about Shipley's case, the ALJ did not err. *Dean*, 2014 WL 4723624, at *1.

Additionally, the ALJ did not use her independent internet research to support her findings in this case. Shipley claims that the ALJ based her decision on the fact that he refused to take acitretin, and that she improperly used this internet research to conclude that acitretin's side effects were minimal. [Dkt. 12 at 9-10.] However, the Court concludes that the ALJ's findings were not based on Shipley's failure to take acitretin. This is shown by the ALJ's language indicating that Shipley's impairments were not severe *despite* his refusal to take the prescribed medication. [R. at 19] ("Subsequent treatment records show that despite the claimant's noncompliance with medication and follow-up, his psoriasis improved."); [R. at 20] ("[Shipley] had been given acitretin at the last dermatology visit but only took it a week due to concerns for side effects and expense…. Nevertheless, in her May 1, 2012 report, Dr. Sanford noted that the claimant had been using [the ointment] and was much improved."). Because the ALJ concluded that Shipley's impairments were not severe *despite* the fact that he refused to take acitretin, the ALJ's use of independent internet research, even if improper, was harmless error. *See Nelson v.*

*Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997) (affirming the denial of SSI benefits despite the ALJ's use of improper extra-record evidence because the denial was supported by substantial evidence and the improper evidence was "incidental to his decision").

## V.  Conclusion

For the aforementioned reasons, the decision of the Commissioner should be **AFFIRMED**.  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  09/24/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

David W. Stewart
STEWART & STEWART
dave@getstewart.com

Heather R. Falks
STEWART & STEWART
heatherf@getstewart.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov